IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JUSTICE I. ALLAH,              )
                              )
    Plaintiff,              )
                              )
    v.                      )    CIVIL ACTION NO.: 2:12-CV-637-WHA
                              )                [WO]
CAPTAIN CHRISTBURG, *et al*.,   )
                              )
    Defendants.             )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is pending before the court on a 42 U.S.C. § 1983 *pro se* complaint filed

by Plaintiff during his incarceration at the Montgomery County Detention Facility

["MCDF"] in Montgomery, Alabama.[1] Plaintiff alleges constitutional violations related

to his ability to engage in observances of his Muslim faith while incarcerated at MCDF,

including his ability to participate in Ramadan in July and August of 2012. He also

asserts allegations of retaliation and unconstitutional conditions of confinement.  Named

as defendants are Captain Hortense Christburg, Wanda Robinson, Reverend Bridges,

Officer Washington, Officer Fleeton, Officer Crayton, and the Kitchen Director at MCDF

(collectively the "county defendants"), and Nurse Callie Johnson. Plaintiff seeks

---

[1] Since filing this action, Plaintiff has been released from custody.

monetary damages for the alleged violations of his constitutional rights and injunctive relief.[2]

Defendants filed special reports and supporting evidentiary materials addressing Plaintiff's claims for relief. In these documents, Defendants deny they acted in violation of Plaintiff's constitutional rights. *Doc. Nos. 44, 48, 49*.  The court granted Plaintiff an opportunity to file a response to Defendants' reports and he did so.[3]  *Doc. No. 52*. The court deems it appropriate to treat  Defendants' reports as motions for summary judgment. This case is now pending on Defendants' dispositive motions.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of

---

[2] In accordance with the prior orders and opinions of the court, this matter is proceeding on the amended complaint filed by Plaintiff on August 3, 2012, and his amendment thereto filed on August 22, 2012.  *See Doc. Nos. 21, 24, 32*.

[3] Any broadening or expansion of his claims in his opposition to Defendants' dispositive motions to include other distinct constitutional claims and/or additional claims for relief is not properly before the court. *See Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend h[is] complaint through argument in a brief opposing summary judgment.").

the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322-24.

The correctional defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. To survive Defendants' properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-

50 (internal citations omitted).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting *Anderson*, 477 U.S. at 242).  Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc*., 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Serv.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations omitted). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001)

(to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. Here, Plaintiff fails to demonstrate a requisite genuine dispute of material fact against Defendants to preclude summary judgment.

## II.  DISCUSSION

*A. Injunctive Relief*

Plaintiff requests injunctive relief against Defendants. Plaintiff is no longer incarcerated at MCDF.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at MCDF, his request for equitable relief has been rendered moot.

*B. Absolute Immunity*

To the extent the alleged constitutional violations Plaintiff lodges against the county defendants are made against them in their official capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). Under all facets of Alabama law, a county sheriff and his jailers act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson Cnty., Ala.*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff as member of State's executive department); *see also Parker v. Amerson*, 519 So. 2d 442 (Ala. 1987) (county sheriff is executive officer of the State).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, see *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.[4]

*Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the county defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking

---

[4] Defendant Johnson is employed by Quality Correctional Health Care, Inc. ["QCHC"]. *See Doc. No. 44, Johnson Affidavit*. To the extent QCHC is properly considered a private corporation which contracts with the Montgomery County Detention Facility to provide medical care and services to inmates in their custody, there is no indication that Defendant Johnson, as an employee of QCHC, is a state official who would be entitled to sovereign immunity.

monetary damages from them in their official capacity.  *Lancaster*, 116 F.3d at 1429;

*Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## C.  First Amendment Claims

Plaintiff arrived at MCDF on January 21, 2012. On July 7, 2012, Plaintiff

submitted an inmate request form in which he asked to be placed on the list for Ramadan.

Defendant Christburg denied the request on July 17, 2012, noting that Plaintiff had not

identified a religious preference upon being booked into MCDF. Plaintiff maintains that

he informed jail officials he was Muslim and contends the county defendant denied him

the opportunity to participate in Ramadan in violation of his constitutional rights. *Doc.

No. 24* at 2-3. Plaintiff was subsequently permitted to participate in Ramadan but claims

that: (i)  on several occasions Defendants Bridges and Robinson denied his requests to

participate in congregational prayer and Jumah (Friday) prayer services; (ii) he was

denied a Holy Quran and prayer rug; (iii) numerous times during Ramadan Plaintiff was

forced to eat in the dark inside his cell; (iv) from July 27, 2012, to August 17, 2012,

Plaintiff's Ramadan meals were not brought in conjunction with the Ramadan prayer

schedule nor was Plaintiff given a prayer schedule or allowed to have one mailed in; (v)

he was sent a prayer schedule, Islamic literature, and an Arabic-English Holy Quran

directly from the publisher but the items were rejected by the jail based on facility rules

prohibiting inmates from receiving books mailed directly from the publisher; (vi)

numerous times his Ramadan breakfast was not of the same type and quantity as the

breakfasts served to general population inmates; (vii) inmates observing Ramadan were

not allowed to congregate or eat together; and (viii) inmates celebrating Ramadan were

not given Eid – a celebratory meal Muslims eat after Ramadan. *Doc. Nos. 24, 32*. Although he does not expressly state it in his amended complaint, the court understands Plaintiff to allege that the county defendants violated his First Amendment right to the free exercise of his religion. Plaintiff further asserts in the amendment to his complaint he "add[s] . . . violation[s] of [his] right[s] to due process, retaliation, and cruel and unusual punishment." *Doc. No. 32* at 1.

Plaintiff's amended complaint and amendment thereto raise claims under the Free Exercise Clause of the First Amendment. These claims are subject to analysis under the standard pronounced in *Turner v. Safley*, 482 U.S. 78 (1987) and *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), and their progeny. The First Amendment's Free Exercise Clause, which has been made applicable to the States through the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303, (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. amend. I.  Inmates do not forfeit all First Amendment rights, including the right to exercise religious practices and beliefs, *O'Lone*, 482 U.S. at 342; *Bell v. Wolfish*, 441 U.S. 520 (1979). Courts have held, however, that a prison rule may infringe on an inmate's First Amendment rights if to do so is necessary to protect legitimate governmental interests, and the rule is no greater than necessary to protect those interests, *i.e*., if it is not an exaggerated response. *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974), *overruled on other grounds, Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989); *Pell v. Procunier*, 417 U.S. 817, 822-23 (1974); *Turner*, 482 U.S. at 87, 89 (the relevant inquiry is whether the prison regulation burdening a fundamental right is

reasonably related to legitimate penological objectives of the corrections system, or whether it represents an exaggerated response to those concerns); *O'Lone*, 482 U.S. at 348-49.

"In the First Amendment context, . . . some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.' " *Shaw v. Murphy*, 532 U.S. 223, 229 (2001), quoting *Pell*, 417 U.S. at 822. Under this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.* at 822. Thus, while inmates retain a constitutional right protected by the First Amendment to exercise their sincerely held religious beliefs freely, this right is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order. *O'Lone*, 482 U.S. at 345; *Turner*, 482 U.S. 78; *Lawson v. Singletary*, 85 F.3d 502, 521 (11th Cir. 1996).  It is, therefore, clear that preservation of security and order within a jail is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest.  *Pell*, 417 U.S. at 823, *Lawson*, 85 F.3d at 512; *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996); *Bell*, 441 U.S. at 546 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.").

A "prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable," *Hakim v.*

*Hicks*, 223 F.3d 1244, 1247 (11th Cir. 2000), and burdens the practice of the inmate's religion or restricts his free exercise of a sincerely held religious belief. *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989); *O'Lone*, 482 U.S. at 349; *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The burden must be substantial and significantly interfere with an inmate's practice of his religious beliefs. *Hernandez*, 490 U.S. at 699. As noted, a policy is "valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *O'Lone*, 482 U.S. at 349. "[S]uch a standard is necessary if 'prison administrators . . . , and not the courts [are] to make the difficult judgments concerning institutional operations.'" *Turner*, 482 U.S. at 89 (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128 (1977)). Consequently, Defendants do not have the burden of proving the validity of its prison regulation; rather, the burden is on Plaintiff to disprove it. *Id*. at 89-91.

In determining whether a prison regulation improperly infringes on a prisoner's constitutional rights, the factors to be considered include: (1) whether there is a valid, rational relationship between the regulation and the legitimate government interest it serves; (2) whether there are alternative means of exercising the right available to the inmates; (3) the impact accommodation of the asserted right will have on jail staff and other inmates; and (4) the absence of ready alternatives as evidence of reasonableness of the regulation. *Turner*, 482 U.S. at 89-91; *Brunskill v. Boyd*, 141 F. App'x 771, 773-74 (11th Cir. 2005). The fourth factor considers whether "a prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." *Overton*, 539 U.S.

11

at 136. However, a "court is not required to weigh evenly, or even consider explicitly, each of the four Turner factors." *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999); *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (interpreting the decision in *Turner* as stating that a court need not weigh evenly or even consider each factor, as rationality is the controlling standard).

   *i. Ramadan 2012 at MCDF*

On July 31, 2012, the court held a hearing on Plaintiff's request for a temporary restraining order that he be permitted to participate in Ramadan at MCDF.[5]  *See Doc. No. 15*. According to the evidence presented at the hearing, when Plaintiff entered MCDF on January 21, 2012, his entry was documented through the facility's computerized inmate booking/intake system. *See Doc. No. 15, Defendants' Exhibit 2*. This system allows intake personnel to document information regarding individuals processed into MCDF including, but not limited to, an inmate's physical features, his social security number, his driver's license number, his FBI number if any, his cell location, and aliases. *Id*. There are boxes at the bottom of the form marked "Religion," "Education," and "Gang Affiliation."  *Id*. Respectively, these boxes reflect "NONE," "High School Diploma," and no entry. *Id*.

The county defendants submitted an affidavit from James Dill, a sergeant at MCDF. Sgt. Dill affirms that when Plaintiff was booked into MCDF he stated his religion

---

[5] When Plaintiff filed his original complaint, he also filed a request for a temporary restraining order ["TRO"]. The court held a hearing on the motion on July 31, 2012. *See Doc. No.* 15. Although Plaintiff subsequently filed an amended complaint, the allegations he presented in the TRO, and which were addressed at the hearing, were presented again in Plaintiff's amended complaint. The court, therefore, takes judicial notice of the evidence presented at the hearing which remains relevant to the pending issues.

had no name, that his religion was a way of life, and that he did not eat pork. Sgt. Dill states that Plaintiff never identified himself a Muslim nor did he indicate a desire to observe or participate in any specific worship or religious service. Only after Plaintiff filed a grievance on July 27, 2012, did jail officials learn Plaintiff was Muslim and wished to participate in Ramadan. *Doc. No. 48, Christburg and Dill Affidavits*.

At the July 31 hearing on Plaintiff's request for a temporary restraining order, he was asked whether he informed jail personnel during the booking process of his religious affiliation. *See Doc. No. 15, Transcript* at 14.   Plaintiff stated that he "believed" he had told them he was Muslim.  *Id.*  Upon being shown the intake form reflecting the word "None" beside the box marked Religion, Plaintiff stated that he had never signed the intake form and that he "never told them that." *Id.* at 15. When asked if he thought jail officials just made it up to input his religion as "none," Plaintiff replied stating only "No. He didn't put it in."  *Id.* When questioned when he advised jail personnel about his religious preference, Plaintiff's response was again vague, noting only that he thought it was maybe January or February." *Id*. In an inmate request form dated July 7, 2012, Plaintiff stated "Would like to get on list for Ramadan which starts in August." *Id., Plaintiff's Exh. 1*. Jail officials responded by noting that when Plaintiff entered MCDC he indicated he had no religion but had requested a King James version of the Bible in February and March and that his request for a copy of the Quran and a prayer rug could not be honored. *Id.*

While the court does not question the sincerity of Plaintiff's religious beliefs, his claim under the First Amendment fails because he has not come forward with any

evidence showing that the county defendants violated his rights. According to Plaintiff, he filed an inmate request slip dated July 7, 2012, requesting that be put on a list for Ramadan which he indicated began in August 2012.[6] *Doc. No. 15, Plaintiff's Exh. A.* The evidence before the court reflects that prior to that time Plaintiff did not otherwise affirmatively identify his religious affiliation as Muslim. Defendant Christburg responded to Plaintiff's July 7 request about being placed on the Ramadan list by noting that upon his entry into the jail he informed jail officials he had no religion but had subsequently requested a Bible, and that his request for a Quran and prayer rug could not be honored. *Id.* The county defendants argue that Plaintiff never informed jail staff he wished to actually participate in the Muslim faith, including the Ramadan holiday, until he filed a grievance on July 27, 2012. *Doc. No. 48, Robinson and Christburg Affidavits, Doc. No. 15, Transcript* at 19-20. Jail officials then placed Plaintiff on the Ramadan List and provided him with a Quran and prayer rug. *Doc. No. 48, Robinson Affidavit.*

Here, the evidence before the court reflects that Plaintiff did not provide prison officials with sufficient information or awareness about his religious affiliation and/or beliefs before filing this complaint. To fail to disclose his religion when he was booked into the detention facility and then subsequently initiate a complaint for failing to accommodate his religious requests is disingenuous. Although Plaintiff maintains there is no legitimate penological interest in requiring an inmate to disclose his religious preference, requiring inmates to register their religious affiliation does, in fact, serve

---

[6] In 2012, Ramadan began on July 20. *Available at* https://en.wikipedia.org/wiki/Ramadan_(calendar_month)

legitimate penological interests. *See Jackson-Bey v. Hanslmaier*, 115 F.3d 1091(2d Cir.1997). In *Jackson-Bey*, the court rejected an inmate's claim he did not need to identify his sect besides registering as a Muslim finding that:

> Registration eliminates speculation and guesswork on the part of prison officials and makes it less likely that a prisoner will manipulate the system by asserting various religions at different times. Registration also allows prison officials to gauge the interest in any particular religion on the part of the inmate population and thus decide whether a "congregation" should be allowed. Registration puts the institution on notice that certain religious accommodations will likely be sought and thereby provides the institution with time to consider if and how to implement them. This, in turn, makes such accommodations more likely and thereby reduces the circumstances in which judicial intervention will be needed.

*Id.* at 1096-97.

Plaintiff's allegations regarding his ability to exercise his religious beliefs, which, as noted, the county defendants maintain they were unaware of until shortly before the filing of this action, may constitute unintentional interference with his religious exercise but does not amount to actionable conduct in this § 1983 action. Notwithstanding Plaintiff's allegation in his opposition that he informed Sergeant Dill at booking he was a Muslim but the jailer failed to record it, the court notes that Sgt. Dill not a named defendant and Plaintiff's own testimony on this issue was speculative. Unless the county defendants took action to impede Plaintiff's exercise of his religious beliefs—and the evidence simply does not support a claim that they did so knowingly—they could not have violated his rights under the free exercise clause. The court additionally notes that when there are delays resulting from the processing of requests for religious accommodations, such delays generally do not violate the First Amendment. *See, e.g.*,

*McCormack v. Myers*, 2007 WL 1704905, at *4 (D.S.C. June 12, 2007) (finding no constitutional violation where delay in processing inmate's request for kosher meals resulted in him not receiving kosher meals for two and a half months); *Holiday v. Giusto*, 2004 WL 1792466, at *5 (D. Or. Aug. 10, 2004) (18 day delay in processing Muslim plaintiff's request for religious diet did not violate Free Exercise Clause). Because Plaintiff has failed to demonstrate that the county defendants unreasonably delayed or interfered with his ability to participate in Ramadan, their motion for summary judgment on this claim is due to be granted.

### ii. Claims (i)-(viii)

Regarding Plaintiff's additional claims concerning infringement of his religious beliefs as delineated above in grounds (i)-(viii), Plaintiff fails to provide specific facts to show how the incidents about which he complains substantially impeded his ability to practice his religious beliefs, and falls far short of demonstrating that the county defendants substantially burdened his First Amendment rights. According to the county defendants, the facility's meal schedule were adjusted to allow inmates observing Ramadan to eat at the times they requested to accommodate fasting during daylight hours and while some meals may have been served prior to the lights being turned on in the cell block, inmates were never in total darkness for security reasons. *See Doc. No. 48, Robinson, Christburg, and Bridges Affidavits and Exh. 1*. The county defendants state that the meals provided to Muslim inmates were the same meals provided to all inmates at MCDF. *Id., Robinson Affidavit.* To maintain institutional security, the county defendants assert that inmates observing Ramadan could not congregate together for

16

meals or services because they were housed in different cell blocks. *Id.* While MCDF provided religious services three days a week by the facility chaplain, requests for additional programs and services had to be addressed and discussed with the Captain of inmate programs and services. *Id.*; *Exh. 1.* While Plaintiff complains that the county defendants failed to let him participate with other inmates in Jumah services and congregation prayer, *Doc. No. 24,* he acknowledges that MDCF had no specific religious services for Muslim inmates and fails to indicate that he submitted a request to appropriate jail personnel for additional services. *Doc. No. 52* at 10. Regarding the religious material Plaintiff ordered but could not receive, he failed to first obtain administration approval as required by the inmate handbook prior to ordering the items directly from a publisher which resulted in jail officials denying the items. *Doc. No. 48, Robinson Affidavit, Exh. 1.* His assertion that prior approval was not a requirement is not supported by the evidence of record. *Id, Exh. 1.*

The court has carefully reviewed the pleadings and finds that Plaintiff fails to demonstrate how he was prevented from practicing his faith or how he was impeded in the ability to exercise his faith regarding the challenges delineated in items (i)-(viii). The conclusory and unsubstantiated assertions in his opposition to the county defendants' dispositive motion fail to demonstrate that the county defendants' conduct about which he complains substantially burdened his exercise of religion and simply alleging that he was substantially burdened in his ability to exercise his faith is not enough. The record is devoid of any evidence that jail personnel purposefully engaged in any conduct designed to unreasonably restrict his ability to observe his religion. *See Emp't Div. v. Smith*, 494

U.S. 872, 877 (1990); *Turner*, 482 U.S. 78. An inmate's free exercise right does not

"depend upon his ability to pursue each and every aspect of the practice of his religion."

*Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996); *see Cruz v. Beto*, 405 U.S. 319, 322

n.2 (1972) (*per cur*iam) (the Free Exercise Clause affords prisoners "reasonable

opportunities" to exercise their religious beliefs, however, limits may be placed on the

religious rights of inmates.)  Rather, the evidence reflects that the county defendants

undertook measures to accommodate Plaintiff's religious beliefs to the extent possible

and practicable without compromising both legitimate institutional security concerns and

the limited allocation of prison resources and without imposing exaggerated responses to

their concerns where Plaintiff failed to produce evidence of any easier and/or less

restrictive alternatives. *See O'Lone*, 482 U.S. at 349-50.  Plaintiff has, therefore, failed to

establish that the conduct or actions of the country defendants resulted in a violation of

the First Amendment and their motion for summary judgment regarding this claim is due

to be granted.

*D.  Eighth Amendment Claim*[7]

---

[7] The pleadings indicate that the actions which form the basis of the instant complaint occurred during Plaintiff's incarceration in MCDF as a pretrial detainee. The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon a pretrial detainee are violative of the Constitution. *Bell v. Wolfish*, 441 U.S. 520 (1979); *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause . . . ."). However, for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985); *Cottrell*, 85 F3d at 1490 ("[T]he applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."). Thus, this court will rely on cases interpreting the Eighth Amendment's prohibition against cruel and unusual punishment, and not the Fourteenth Amendment's guarantee of due process, when addressing Plaintiff's claims for relief because the standard for violations of the Eighth Amendment apply to pretrial detainees

Plaintiff complains that on July 31, 2012, Defendant Washington failed to give him his Ramadan breakfast and that on two occasions his Ramadan meals were thrown in the trash - once by Defendant Fleeton and once by Defendant Crayton - even though he did not refuse these meals or ask that they be thrown out. The court considers Plaintiff's allegations of missed meals to as assert an Eighth Amendment violation.

A prison official has a duty under the Eight Amendment to "ensure that inmates receive adequate food, clothing, shelter and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To demonstrate an Eighth Amendment violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Id.* at 834. The objective component requires an inmate to prove that he was denied the "minimal civilized measure of life's necessities." *Id.* The challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to his future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004). The subjective component requires a prisoner to prove that the prison official acted with "deliberate indifference" in disregarding that risk by showing that an official knew the inmate faced a "substantial risk of serious harm" and with such knowledge, disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 828, 834, 837.

When viewed in light of these parameters, Plaintiff's claim supports no Eighth Amendment violation. Plaintiff does not show he was subjected to an unquestioned and serious deprivation of his basic human needs or that he faced an unreasonable risk of

through the Due Process Clause of the Fourteenth Amendment. *See Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994).

serious damage to his future health or safety because of missing a few meals.  When reviewing claims involving a denial of food, courts look to the amount and duration of the deprivation in determining whether the deprivation is sufficiently serious. *See Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998). Here, Plaintiff alleges the deprivation of three meals on separate occasions. The court concludes this deprivation is not sufficiently serious to rise to the level of a constitutional violation. *See, e.g.*, *Dartling v. Farwell*, 139 F. App'x 847 (9th  Cir. 2005) (inmate's allegation he was deprived of a single meal did not constitute an injury serious enough to support an Eighth Amendment claim.); *Wilkins v. Roper*, 843 F. Supp. 1327 (E.D. Mo. 1994) (plaintiff failed to state a claim under the Eighth Amendment based on the denial of a single meal); *Brown v. Madison Police Dep't*, 2003 WL 23095753, *3 (W.D. Wis. 2003) (dismissing claim by plaintiff alleging that he was denied two meals on a single occasion).  Plaintiff's claim, at most, shows only a lack of due care by jail officials which is not actionable under 42 U.S.C. § 1983. The protections of the Constitution "are just not triggered by lack of due care by prison officials." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels v. Williams*, 474 U.S. 327, 333 (1986); *see also Whitley v. Albers*, 475 U.S. at 319 (holding that a violation of the Eighth Amendment must involve "more than an ordinary lack of due care for the prisoner's . . . safety").  The county defendants are entitled to summary judgment on this claim.

*E. Retaliation Claim*

Plaintiff claims Defendants Fleeton and Crayton placed him on lockdown without a hearing for filing grievances against them. *Doc. No. 32*. The county defendants deny

Plaintiff's allegation and assert that jail records reflect that the only time Plaintiff was placed on lockdown occurred on June 11, 2012, after jail officials determined he had been in an altercation with another inmate. *Doc. No. 48, Robinson Affidavit and Exh. 3*.

The First Amendment rights of pretrial detainees are at least as extensive as the constitutional rights afforded convicted prisoners.  *See Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979). A claim that a plaintiff was penalized for exercising a constitutional right is properly considered under the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) (*en banc*). The First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits. *Wright v. Newsome*, 795 F.2d 964 (11th Cir. 1986); *Farrow v West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  Conclusory allegations of retaliation, however, cannot demonstrate the existence of each element requisite to establishing retaliation. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266 (11th Cir. 2009), *overruled on other grounds by Mohamad v. Palestinian Auth.*, ___U.S. ___, 132 S. Ct. 1702 (2012), (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit . . . conclusory allegations as true").

In ruling on an inmate's First Amendment retaliation claim, courts use a burden shifting analysis. *Moton v. Cowart*, 631 F.3d 1337, 1341-42 (11th Cir. 2011). Plaintiff must establish three elements: "(1) 'his speech or act was constitutionally protected'; (2) 'the defendant's retaliatory conduct adversely affected the protected speech'; and (3) 'there is a causal connection between the retaliatory actions and the adverse effect on speech.'"  *Id*. at 1341 (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir.

2005)); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X*, 175 F.3d at 397.   Regarding the causation prong a court "asks whether the defendants were subjectively motivated" by Plaintiff's protected act.  *Smith*, 532 F.3d at 1278; *see also Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988) (noting that a causal connection may be alleged by a chronology of events that create a plausible inference of retaliation.). If Plaintiff shows that "his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Moton*, 631 F.3d at 1341-42 (quoting *Smith*, 532 F.3d at 1278). Upon production of evidence demonstrating a legitimate reason for the conduct and/or actions in question, Plaintiff, who has the ultimate burden of proof, must show there is a genuine dispute of material fact concerning Defendants' defense. *See Osterback v. Kemp*, 300 F. Supp. 2d 1238, 1254 (N.D. Fla. 2003). Because any adverse action taken against a prisoner by a prison official can be characterized by the inmate as a retaliatory act, federal courts must "carefully scrutinize" retaliation claims brought by prisoners challenging adverse actions of correctional personnel, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), and "approach prisoner claims of retaliation with skepticism and particular care.  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally

proscribed retaliatory act."   *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A*., 534 U.S. 506 (2002).

Regarding Plaintiff's claim that Defendants Fleeton and Crayton retaliated against him for filing grievances against them by placing him in his cell on a twenty-four hour lockdown, he does not indicate when he filed grievances against Defendants Fleeton and Crayton or when they allegedly subjected him to lockdown, and the county defendants deny that Plaintiff was ever placed on lockdown for filing grievances.   *Doc. No. 48, Robinson Affidavit and Exh. 3*.   Plaintiff presents no countervailing evidence other than to claim that no record of the lockdowns exist because written reports are not generated at MCDF for twenty-four lockdowns. *Doc. No. 52* at 9.

Plaintiff fails to identify and connect any specific grievance protected by the First Amendment to his allegation of retaliation by Defendants Fleeton and Crayton nor does he describe a timeline of events which could chronologically infer retaliation. There are no direct links or identified causal connections to Plaintiff's "grievances" against Defendants Fleeton and/or Crayton that indicate retaliation. While courts liberally construe the complaints of *pro se* plaintiffs, they are not at liberty to rewrite the complaint to state a claim. *See Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11th Cir. 2002) (*Pro se* complaints must be held to less stringent standards than formal pleadings drafted by lawyers.); *GRJ Inv., Inc. v. Cnty. of Escambia, Fla*., 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010) (The leniency to which *pro se* plaintiffs are entitled "does not give a court license to serve as de facto counsel for a party . . . or to rewrite an otherwise

23

deficient pleading in order to sustain an action."). Plaintiff's failure to connect Defendants Crayton's and or Fleeton's actions to a protected constitutional right amounts to only a mere conclusory allegation which is not sufficient to state a claim of retaliation. Broad and unsubstantiated allegations of retaliation are insufficient and will not defeat a motion for summary judgment. *See Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 003) (because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 983) (a complaint "which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."). The county defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

## F.  Defendant Johnson

Plaintiff complains that Defendant Johnson failed to change his medication schedule to accommodate his religious belief requiring him to fast during Ramadan. *Doc. No. 32*.  After receiving Plaintiff's request to change his medication schedule, Defendant Johnson submitted the inquiry to jail administrators who advised her that the institution's established schedule for administering medication should be followed. *Doc. No. 44, Johnson Affidavit*.  Plaintiff counters that Defendant Johnson, not jail officials, had the authority to decide the medication inmates receive, when they receive it, and how they receive it.  *Doc. No. 52* at 4.

Where Plaintiff's complaint is concerned regarding the time his medication would be dispensed during Ramadan, the evidence reflects that Defendant Johnson complied with the directive from MCDF administrators that the facility's established inmate

medication schedule was to be followed. Plaintiff's unsupported and conclusory assertion that Defendant Johnson had authority to alter a particular facet of the jail's scheduling of inmate services or activities is insufficient. Without more, Plaintiff cannot seek to hold Defendant Johnson liable for another jail official's alleged constitutional violation where there is no indication she had authority to change the jail's established medication administration schedules for non-medical and/or non-emergency reasons. Nor has Plaintiff shown that Defendant Johnson should bear any supervisory liability over county jail personnel at MCDF regarding the conduct at issue. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each . . . defendant, through the official's own individual actions, has violated the Constitution."). In light of the foregoing, Defendant Johnson is entitled to summary judgment on this claim.

### III.  CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Plaintiff's request for injunctive relief be DISMISSED as moot;

2.  Defendants' motions for summary judgment (*Doc. Nos. 44, 49*) be GRANTED;

3.  Judgment be ENTERED in favor of Defendants.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **August 10, 2015**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is

objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 27th day of July, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE